David Leon JONES, Appellant,

v.

The STATE of Texas, State.

No. 2–01–529–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 28, 2003.

Robert N. Udashen, P.C., Sorrels & Udashen, Dallas, for Appellant.

Bruce Isaacks, Crim. Dist. Atty., Charles E. Orbison, Paige McCormick, Lisa Decker, Asst. Dist. Attys., Denton, Matthew Paul, State Prosecuting Atty., Austin, for Appellee.

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

A jury convicted Appellant David Leon Jones ("Jones") of indecency with a child and assessed his punishment at forty years' confinement after he pleaded "true" to an enhancement paragraph in the indictment. In five issues on appeal, Jones contends that the trial court: (1) abused its discretion by admitting extraneous offense/bad acts evidence over objection; (2) erred by refusing to give the jury a limiting instruction each time extraneous offense/bad acts evidence was presented to the jury; (3) erred by giving improper limiting instructions on the use of extraneous offense/bad acts evidence; (4) erred by overruling his objection to the State's closing argument; and (5) erred by instructing the jury on the definition of "reasonable doubt" at the guilt-innocence phase of trial. We will affirm.

### II. FACTUAL BACKGROUND

When G.V. was in the seventh grade, she was introduced to Jones through her friend, K.W., who dated Jones's son. Jones brought G.V., K.W., and their friends lunch at school once or twice a week and took them to his son's baseball games, to the movies, and horseback riding. During the summer, Jones took G.V. and her friends to the lake and to swim at Clearwater Pool, and he continued to take them to see movies almost every weekend. Jones asked G.V. to call him by his first name because he said that being called "Mr. Jones" made him feel old.

Eventually, Jones made sexual comments to G.V. He told her that she looked good in a swimsuit, that he preferred shaved girls because it was better "when he would eat them out," and that he did not have a great marriage or "get much sex". Jones also told G.V. and her friends that they could ask him sexual questions and that he would explain everything to them.

On Saturday, July 15, 2000, Jones took G.V., K.W., and M.E. to see a movie. After the movie, Jones told the girls that an actress in the movie had a nice body that "turned him on" and that G.V. looked like the actress. On the way home from the movie, Jones took K.W. and M.E. "doorbell ditching." K.W. and M.E. would ring someone's doorbell and then run. G.V. could not participate in this activity because she had recently had stitches removed from her leg, so she was left alone with Jones in the truck.

While Jones was alone with G.V., he asked her how far she had gotten with her boyfriend and whether she had ever given him a blow job. G.V. answered that she did not know how to give a blow job. Jones said that he would show her; he took two of G.V.'s fingers, placed them in his mouth, and moved them back and

forth. Shortly after this incident, K.W. and M.E. returned from "doorbell ditching," and Jones dropped both of them off at M.E.'s house, leaving G.V. alone with Jones again.

Jones told G.V. that he had something to show her at his house. When they went inside Jones's house, G.V. noticed that it was dark and asked where Jones's wife and children were. He responded that they were in Wichita Falls. Jones then told G.V. that he had something to show her in his daughter's room. Once in his daughter's room, Jones sat next to G.V. on the bed and played a videotape of a couple having sex. Jones placed his hand on G.V.'s leg and asked if the tape "turned her on." G.V. responded, "No, not really." Jones told G.V. that it excited him, and he got in front of G.V., straddled her, and pushed her down on her back on the bed. Jones put his hands down G.V.'s pants, touched her, and "spread her." G.V. started to cry, and Jones stopped. G.V. sat up, and Jones again touched and rubbed G.V.'s private part on the outside of her shorts while telling her that she was warm and wet. Afterwards, Jones told G.V. that he did not mean to do it and that she should not tell anyone or else he would not be able to take the girls places and have fun. G.V. initially agreed not to tell anyone, but approximately three weeks later, G.V. told K.W. and A.W. and their father. K.W. and A.W.'s father then called G.V.'s mother.

On August 9, 2000, Jones spoke "off the record" with Corey Blount (hereinafter "Blount"), a police officer with the Highland Village Police Department who was also Jones's friend. Jones told Blount that he was suspected of inappropriately touching a girl, that touching did occur, but that it was accidental. On August 12, 2000, at a back-to-school party, Jones took G.V. upstairs by herself and told her that what had happened was a joke. On August 16, 2000, Officers Jerry Hull and Terry Barnhart, investigators with the Highland Village Police Department, searched Jones's house for the sexual videotape that Jones showed G.V. However, they were unable to locate the videotape.

## III. Admissibility of Extraneous Offenses and Bad Acts

During the direct examination of G.V., the State sought to introduce extraneous offenses/bad acts committed by Jones. The trial court held a hearing outside the presence of the jury to determine the evidence's admissibility. The bad acts by Jones involving G.V. included Jones paying money to G.V. and other underage girls to remove part or all of their swimsuits, providing alcohol to G.V. and other underage girls, offering underage girls money to run naked down the beach, and attempting to untie the swimsuits of G.V. and her friends. Jones asserted objections to the extraneous bad acts evidence pursuant to Rules 401, 404(b), and 403, and the court initially sustained his objections. Later, however, the court admitted this evidence, granting Jones a running objection.

The State also offered extraneous offense/bad acts evidence on rebuttal, following Jones's case in chief. The State called four girls as rebuttal witnesses, and they testified to other offenses and bad acts by Jones on occasions when G.V. was not present. Jones objected to the testimony concerning each of the incidents, but the court admitted the testimony over his objection for the purposes of showing motive, plan, and opportunity, and to rebut a defensive theory. Thus, the extraneous offense/bad acts evidence admitted at the guilt-innocence phase of trial falls into two

categories: acts involving G.V.[1] admitted during the State's case-in-chief and acts not involving G.V. admitted during the State's rebuttal.

The extraneous offense/bad acts evidence involving G.V. included the following conduct by Jones. G.V. testified that once when she and a number of other girls were at Clearwater Pool with Jones, he offered them fifty dollars to take off their swimsuits. G.V. and Jones's daughter, C.J., accepted the offer. Jones told his daughter not to tell anyone about what happened. K.W., A.W., T.B., and M.E. confirmed this incident. G.V. also testified that on another occasion, when Jones took her and other girls out on his boat, he offered K.W. two hundred dollars to run naked on the beach, and she accepted. K.W. and M.E. also testified about this incident. K.W. said that Jones paid her in cash. G.V. testified that several times at the lake and twice at Clearwater Pool, Jones gave her and the other girls wine coolers disguised in Gatorade bottles. K.W., M.E., and A.W. also testified that Jones gave them alcohol. G.V. said that while the girls were with Jones at the lake, he would try to untie their swimsuits in the water. G.V. said he sometimes tried to pull down her swimsuit bottoms. M.E. told the jury about this same incident.

The extraneous bad acts evidence involving minor girls other than G.V. included the following conduct by Jones. J.P. testified that Jones was physically affectionate toward her, putting his hands around her, touching her, and hugging her for extended periods of time. She said Jones's actions made her feel uncomfortable. During a ski trip that her family took with Jones and his family, Jones grabbed J.P.'s face and kissed her, which "freaked her out." J.W. testified that she and other young girls babysat Jones's kids and said Jones was always "touchy-feely" with them, hugging, kissing, and tickling them frequently on their inner thighs or stomach. J.W. said once when she was babysitting, Jones massaged her back and then started massaging her breasts under her bra. Jones told J.W. that he was only joking around, but then grabbed her breasts on the outside of her shirt. R.H. testified that she sometimes babysat Jones's children and that while she was at Jones's house babysitting, Jones had tickled her upper inner thigh near her crotch. She said that once when she bent over to get something from the refrigerator, Jones reached up her shorts and touched her bottom. A.S., another babysitter, said that she and Jones's daughter were lying on a bed when Jones, wearing only a towel wrapped around him, walked over to the bed. Jones began massaging A.S.'s back and then massaged under A.S.'s bra and on her bottom. A.S. said she felt very uncomfortable.

## A. Standard of Review for a Determination Under Rule 404(b)

Rule 404(b) embodies the established principle that a defendant is not to be tried for collateral crimes or for being a criminal generally. TEX.R. EVID. 404(b); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim.App.1992); *Booker v. State*, 103 S.W.3d 521, 530 (Tex.App.-Fort Worth 2003, pet. ref'd) (op. on reh'g); *Curtis v. State*, 89 S.W.3d 163, 170 (Tex.App.-Fort Worth 2002, pet. ref'd). Consequently, extraneous offenses are not admissible at the guilt-innocence phase of trial to prove that a defendant acted in conformity with his character by committing the charged offense. TEX.R. EVID. 404(b); *Booker*, 103 S.W.3d at 529; *Martin v. State*, 42 S.W.3d

---

1. This category includes acts that were directed at G.V. by Jones, as well as acts directed at a group of underage girls where G.V. was present.

196, 201 n. 2 (Tex.App.-Fort Worth 2001, pet. ref'd). An extraneous offense, however, has noncharacter-conformity relevance where it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX.R. EVID. 401; *Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). That is, extraneous offense evidence that tends to make an elemental or evidentiary fact more or less probable or tends to rebut some defensive theory is relevant beyond its tendency to prove a person's character or that he acted in conformity therewith. *Montgomery v. State,* 810 S.W.2d 372, 386–87 (Tex.Crim.App. 1991) (op. on reh'g); *Johnson v. State,* 932 S.W.2d 296, 301 (Tex.App.-Austin 1996, pet. ref'd). Consequently, evidence of other crimes or extraneous misconduct may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. TEX.R. EVID. 404(b); *Booker,* 103 S.W.3d at 529–30. Such evidence may also be introduced to rebut a defensive theory. *Powell,* 63 S.W.3d at 439–40.

Additionally, article 38.37 of the Texas Code of Criminal Procedure expands the admissibility of extraneous acts evidence in trials involving certain offenses committed against a child under seventeen years of age:

> Sec. 2. Notwithstanding Rules 404 and 405, . . . evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp.2003); *Rankin v. State,* 41 S.W.3d 335, 347 (Tex.App.-Fort Worth 2001, pet. ref'd).

 The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility. *See Rankin v. State,* 974 S.W.2d 707, 718 (Tex. Crim.App.1998) (op. on reh'g). The trial court's task is to determine whether extraneous offense evidence is relevant for a purpose other than the propensity of the defendant to commit crimes or other bad acts. *Booker,* 103 S.W.3d at 530. Rulings on relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim. App.), *cert. denied,* 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993); *Corley v. State,* 987 S.W.2d 615, 618 (Tex.App.-Austin 1999, no pet.). Moreover, appellate courts should give great discretion to the trial courts in matters of relevancy, reversing only if the trial court acts outside "the zone of reasonable disagreement." *Montgomery,* 810 S.W.2d at 391.

**B. Rule 404(b) Relevance Determination**

Jones contends that although some of the extraneous offenses and bad acts were relevant, they were all more prejudicial than probative, were used to establish that he acted in conformity with his bad character, and did not comply with the rules of law for rebutting a defensive theory. He further argues that their improper admission harmed him. The State asserts that the extraneous offenses and bad acts involving G.V. were statutorily relevant pursuant to code of criminal procedure article 38.37 and that the acts not involving G.V. were relevant to show motive, opportunity, and plan and to rebut a defensive theory.

### 1. Relevance of Acts Involving G.V.

██ G.V., K.W., A.W., T.B., and M.E. testified concerning extraneous crimes, wrongs, or acts by Jones against G.V., who was the victim of the charged offense. The State contends that this evidence was admissible under article 38.37 because it had a bearing on relevant matters including Jones's and G.V.'s states of mind and the previous relationship between them. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2; *Hitt v. State*, 53 S.W.3d 697, 704–05 (Tex.App.-Austin 2001, pet. ref'd) (recognizing that, in cases involving the sexual abuse of children, article 38.37, section 2 supersedes the application of Texas Rules of Evidence 402 and 404). Jones agrees that the evidence showing that he tried to untie and/or take off G.V.'s swimsuit at the lake, that he furnished alcohol to G.V., and that he offered G.V. money at Clearwater Pool to take off her swimsuit, is relevant. Jones disputes, however, the relevance under article 38.37 of the evidence showing that he offered to pay underage girls other than G.V. to take off their swimsuits, that he offered other underage girls money to run naked on the beach, that he furnished alcohol to other underage girls, and that he tried to remove the swimsuits of underage girls other than G.V. at the lake. He contends that these acts have very little, if any, relevance as to whether Jones was indecent with G.V. and only tend to establish that he acted in conformity with his bad character.

Here, it would have been extremely difficult for the girls who testified to separate Jones's actions toward G.V. from his actions toward them because his actions and words were directed at all the girls simultaneously. Even if the girls could have somehow distinguished Jones's conduct toward the group from Jones's conduct specifically toward G.V., this distinction would have given the jury an inaccurate picture of Jones's relationship with G.V. *Accord Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim.App.2000) (indicating jury is entitled to know all relevant surrounding facts and circumstances of charged offense). Jones's prior relationship with G.V. was developed through group activities that included K.W., A.W., T.B., and M.E. Their testimony was relevant to give an accurate picture of Jones's prior relationship with G.V. Moreover, the trial court's charge instructed the jury that it could consider these acts only in determining the state of mind of Jones and G.V. and the previous or subsequent relationship between Jones and G.V. We hold that the trial court did not abuse its discretion by determining that the extraneous offenses involving G.V. were relevant under article 38.37 to prove the charged offense.

### 2. Relevance of Acts Not Involving G.V.

██ J.P., J.W., R.H., and A.S. testified for the State in rebuttal concerning extraneous crimes, wrongs, or acts committed by Jones against them. Jones argues that this evidence was not relevant to any fact at issue and should have been excluded.

██ As stated above, extraneous offenses/bad acts can be admitted for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. TEX.R. EVID. 404(b); *Booker*, 103 S.W.3d at 529–30. Additionally, extraneous offense evidence may be relevant and admissible to rebut a defensive theory. *See Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.) (op. on reh'g), *cert. denied*, 519 U.S. 1030, 117 S.Ct. 587, 136 L.Ed.2d 516 (1996). The court of criminal appeals explained the use of extraneous offenses in rebuttal,

> Rebuttal of a defense means evidence is introduced contradicting some aspect of the defense itself. . . . When a defense

witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach the defense witnesses' testimony by introduction of similar extraneous offenses. By raising a defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial.

*Roberts v. State,* 29 S.W.3d 596, 601 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd) (citations omitted).

Jones introduced testimony that he was not interested in sex; that his wife was not in Wichita Falls on the evenings of July 15 or July 22; that G.V. allegedly told a different version of the incident to a male friend; that he appeared embarrassed at the Clearwater Pool when one of the girls had her top off; and that he was in a hot tub alone with a girl and nothing happened. Jones claimed that G.V. fabricated the incident and that the girls who testified about other bad acts were lying or exaggerating in an attempt to frame him for some unknown reason. Thus, the testimony of J.P., J.W., R.H., and A.S. regarding Jones's conduct toward them was admissible to rebut the impression Jones left with the jury: that G.V. fabricated the story and that she and her friends framed him. *See Wheeler v. State,* 67 S.W.3d 879, 885 (Tex.Crim.App.2002); *see also Moore v. State,* 4 S.W.3d 269, 276 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (stating that evidence of extraneous acts between defendant and third party are admissible to rebut defensive theory that defendant was being framed).

The trial court ruled that J.P.'s, J.W.'s, R.H.'s, and A.S.'s testimony was relevant to show motive, opportunity, and plan and/or to rebut Jones's defensive theories and instructed the jury that it could consider Jones's extraneous offenses/bad acts towards these girls only for those purposes. The trial court's limiting instruction shows that it admitted the evidence for its noncharacter-conforming purpose. *See Powell,* 63 S.W.3d at 438. We hold that the trial court did not abuse its discretion by determining that the testimony of J.P., J.W., R.H., and A.S. concerning the extraneous offenses/bad acts not involving G.V. was relevant for purposes other than character conformity.

## C. Standard of Review for Trial Court's Rule 403 Determination

■■■■ Having determined that the extraneous offense/bad acts involving G.V. and those not involving G.V. are relevant, we next review whether the trial court abused its discretion by overruling Jones's Rule 403 objections. If a trial court determines that evidence of other crimes or extraneous misconduct has relevance aside from character conformity, and a timely, proper Rule 403 objection is made, the trial court must make a balancing determination under Rule 403. *Montgomery,* 810 S.W.2d at 388–89. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery,* 810 S.W.2d at 389. Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one. *Id.* In evaluating the trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion," recognizing that

the trial court is in a superior position to gauge the impact of the relevant evidence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim.App.1999); *Curtis*, 89 S.W.3d at 170.

The trial court's balancing determination must be measured against the relevant criteria by which a Rule 403 decision is made. *Mozon*, 991 S.W.2d at 847. The relevant criteria in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way;" (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. *Id.* (citing *Montgomery*, 810 S.W.2d at 389–90). When the relevant criteria are viewed objectively and lead to the conclusion that the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. *Curtis*, 89 S.W.3d at 170 (citing *Montgomery*, 810 S.W.2d at 392).

### D. Rule 403 Balancing Test

Jones argues that the prejudicial effect of the extraneous offenses/bad acts far outweighed their probative value. Specifically, with regard to the extraneous offenses involving G.V., Jones argues that the extraneous offenses placed him in an extremely negative light, with a high potential for impressing the jury in an irrational, indelible way; that they took almost as much time for the State to develop as the charged offense; and that they did not directly prove that Jones did what G.V. claimed. With regard to the extraneous offenses not involving G.V., Jones argues that the testimony simply showed Jones's unnatural attention toward teenage girls and constituted a continuation of the character conformity evidence the State propounded throughout the trial. We disagree.

### 1. Probative Value of Acts Involving G.V.

Applying the Rule 403 balancing factors set out in *Montgomery*, we first examine how compellingly the extraneous acts involving G.V. show Jones's intent in the charged offense and evaluate the strength of the evidence connecting Jones to these extraneous offenses. Here, the indictment charged that Jones, "with the intent to arouse or gratify the sexual desire of [Jones], intentionally or knowingly engage[d] in sexual contact with [G.V.], by touching the genitals, of [G.V.] a child younger than 17 years of age and not the spouse of [Jones]." Evidence that Jones provided alcohol to minors and then offered them money for nudity, untied the swimsuits of underage girls, paid minors to remove their swimsuits, and paid to see an underage girl run naked on the beach demonstrates Jones's intent to arouse or gratify his sexual desire via underage girls. Although the extraneous sexual offenses evidence carries some emotional weight, all of the extraneous acts involving G.V. were less heinous than the evidence relating to the charged offense involving Jones's reaching into G.V.'s pants and touching

her. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex.Crim.App.), *cert. denied*, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). Consequently, here, the extraneous acts were not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose. *See id.* Additionally, a review of the record shows that the State did not spend an excessive amount of time developing the extraneous offense testimony. *Cf. Manning v. State*, 84 S.W.3d 15, 23–24 (Tex. App.-Texarkana 2002, pet. granted) (noting third *Montgomery* factor weighed in favor of excluding extraneous offense when one-fifth of trial time spent proving extraneous offense). Furthermore, the State needed the evidence because Jones argued that the charged offense never occurred, or that G.V. fabricated the whole incident. The evidence of extraneous acts showing Jones's behavior toward G.V. and her friends on other occasions, therefore, was necessary to rebut Jones's claims of fabrication. *See Waddell v. State*, 873 S.W.2d 130, 136 (Tex.App.-Beaumont 1994, pet. ref'd) (holding that extraneous bad acts were logical and necessary rebuttal of major defense theory of fabrication). We hold that the trial court did not abuse its discretion by concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the extraneous acts involving G.V.

**2. Probative Value of Acts Not Involving G.V.**

 Under the first *Montgomery* factor, the acts not involving G.V.—including evidence that Jones kissed an underage girl, massaged two underage girls under their bras, and touched another underage girl's bare bottom—constituted compelling evidence of Jones's intent in the present case to arouse or gratify his sexual desires. These acts, like the acts involving G.V.,

were not as heinous as the charged offense and were not so inherently inflammatory that they were likely to cause the jury to act in an irrational, indelible way. *See Taylor*, 920 S.W.2d at 323. Moreover, a review of the record shows that the State did not spend an inordinate amount of time developing the extraneous acts not involving G.V. *Cf. Booker*, 103 S.W.3d at 536 (noting third *Montgomery* factor weighed in favor of excluding extraneous offense when trial time spent proving extraneous offense exceeded time spent proving charged offense). The State's need for this evidence was apparent because Jones had cast doubt on the veracity of G.V.'s testimony and had offered witness testimony that he had no interest in sex. *See Wheeler*, 67 S.W.3d at 888 (holding that State's rebuttal evidence was needed to show offensive touching actually occurred). Consequently, the testimony of the four girls contradicted defense evidence that Jones was not interested in sex and was simply being framed. An application of the *Montgomery* factors to the extraneous acts not involving G.V. demonstrates that the trial court did not abuse its discretion by overruling Jones's Rule 403 objection. We overrule Jones's first issue.

## IV. WAIVER AND HARMLESS ERROR IN REFUSING TO GIVE LIMITING INSTRUCTIONS

 In his second issue, Jones alleges that the trial court erred by refusing to give the jury contemporaneous limiting instructions before A.W., T.B., J.P., J.W., R.H., and A.S. testified. Rule 105 of the Texas Rules of Evidence requires a limiting instruction, upon proper request, when evidence is admitted for one purpose but is not admissible for another purpose. TEX.R. EVID. 105(a); *see also Rankin*, 974 S.W.2d at 713. When a trial court errs by

refusing to give a contemporaneous limiting instruction, that error is non-constitutional and is subject to a harmless error analysis pursuant to Texas Rule of Appellate Procedure 44.2(b). *See Jones v. State*, 944 S.W.2d 642, 653 (Tex.Crim.App.1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *Lemmons v. State*, 75 S.W.3d 513, 524–25 (Tex.App.-San Antonio 2002, pet. ref'd); *Rankin v. State*, 995 S.W.2d 210, 215 (Tex.App.-Houston [14th Dist] 1999, pet. ref'd). A non-constitutional error is harmless unless it affects a defendant's substantial right:

> Rule 44.2(b) requires an appellant to show that a substantial right was affected. Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect.

*Lemmons*, 75 S.W.3d at 524–25 (citations omitted).

## A. Jones Failed to Timely Request a Limiting Instruction

■ Jones first argues that the trial court improperly overruled his requests that the prosecution state the purpose for offering the extraneous offense/bad acts evidence and his request that the jury be instructed accordingly with regard to A.W.'s and T.B.'s testimony. A.W. testified that Jones provided alcohol to underage girls when he offered them money to take off their swimsuits; T.B. testified that Jones offered underage girls money to jump into the pool without their tops. At the time Jones requested limiting instructions concerning A.W.'s and T.B.'s testimony, G.V. and others had already testified regarding these events. Jones did not request a limiting instruction at the time the events were first described. Consequently, the evidence was admitted for all purposes and Jones was not later entitled to a contemporaneous limiting instruction. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App.2001) (holding that when party does not request limiting instruction at first opportunity, evidence is admitted for all purposes). We hold that Jones waived any error with respect to the trial court's refusal to give a contemporaneous limiting instruction with A.W.'s and T.B.'s testimony.

## B. Refusal to Give Contemporaneous Limiting Instruction Harmless

■ Jones also complains about the trial court's refusal to give contemporaneous limiting instructions before J.P., J.W., R.H., and A.S. testified as rebuttal witnesses. The testimony of these girls was admissible only to prove motive, opportunity, or plan and to rebut Jones's defensive theories. Based on Jones's timely request, the trial court erred by refusing to give a limiting instruction to the jury, limiting their consideration of this testimony to the stated purposes. *See* Tex.R. Evid. 105(a).

Here, after examining the record as a whole, we have a fair assurance that this error did not influence the jury, or had but a slight effect and did not affect any substantial right belonging to Jones. *See* Tex. R.App. P. 44.2(b). Any prejudicial influence caused by the trial court's error was limited by various factors. First, the testimony at issue was presented in the State's rebuttal case, toward the end of trial. Consequently, there was a relatively short interval between the introduction of the evidence and the trial court's reading of limiting instructions in the court's charge. *See Lemmons*, 75 S.W.3d at 525 (holding that, given short time between introduction of extraneous offense evidence and

reading of charge's limiting instruction, error did not affect substantial right). Second, as discussed above, the rebuttal extraneous offense/bad acts evidence was not more heinous or inflammatory than the charged offense, minimizing the prejudicial effect of the evidence even in the absence of a contemporaneous limiting instruction. *See, e.g., Jones,* 944 S.W.2d at 654. Finally, Jones received one limiting instruction in the jury charge with regard to acts involving G.V. and a second limiting instruction with regard to acts not involving G.V., which further reduced the risk that the jury might misuse the evidence during jury deliberations. *See id.* For these reasons, we conclude that the trial court's error in overruling Jones's request for a contemporaneous limiting instruction prior to the rebuttal testimony of the four girls was harmless. *See* Tex.R.App. P. 44.2(b). We overrule Jones's second issue.

## V. PROPER LIMITING INSTRUCTION AND DEFINITION IN JURY CHARGE

In his third and fifth issues, Jones alleges that the trial court erred by giving an improper limiting instruction on the use of extraneous offense/bad act evidence and by giving an improper definition of "reasonable doubt" in the jury charge at the guilt-innocence phase. We address these issues in turn.

### A. Standard of Review for Alleged Error in Jury Charge

■■■ Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Error in the charge, if timely objected to in the trial court, requires reversal if the error was

"calculated to injure [the] rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); *see also Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; see also Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App. 2000).

### B. Proper Limiting Instruction on Use of Extraneous Acts

■■■ Jones contends in his third issue that the trial court erred by refusing to explain to the jury the specific issue or issues that each extraneous bad act was admitted to prove. Jones also claims that the trial court erred by instructing the jury that it could consider the extraneous act evidence as proof of opportunity.

The trial court instructed the jury with regard to the acts involving G.V.:

> [I]f you find and believe beyond a reasonable doubt from such testimony that other acts were committed, you may then consider the same in determining the state of mind of the defendant and of the child, [G.V.], and the previous and subsequent relationship between the defendant and the child, [G.V.], if it does and for no other purpose.

The trial court instructed the jury with regard to the acts involving persons other than G.V.:

[I]f you find and believe beyond a reasonable doubt from such testimony that other acts were committed, you may then consider the same in determining motive, opportunity, plan, and/or rebuttal of a defensive theory, if it does and for no other purpose.

The record indicates that the trial court reached its decision to give the preceding instructions after hearing arguments from both sides:

[DEFENSE COUNSEL]: Judge, then further on in that same paragraph, starting three lines up from the—two or three lines up from the end of the paragraph, where it reads, you may then consider the same in determining motive, opportunity and intent, preparation, plan and rebuttal of a defensive theory, I object to that laundry list of possibilities and ask that it be restricted to whatever reason the State offered it, whatever theory they submitted that evidence on.

THE COURT: What wording would you propose to substitute?

[DEFENSE COUNSEL]: Well, I don't know what their theory is, but it's either motive or opportunity or maybe it's intent or—I don't know, maybe they think it's preparation or plan or maybe they think it's rebutting, I don't know, but whatever they think it is, I think it ought to be limited and the instruction ought to be limited in scope to why they offered it.

THE COURT: Well, let me say this. As far as the Court's concerned, and in order to be a guide to the State, since we have so many of these extraneous, I think each one of them has to stand on its own, and I don't know that—I mean, I can see how some of them can come in under one and some under another.

[PROSECUTOR]: Well, Judge, our theory in admitting both of them, if you look at it, really, there's only two sets of girls. Once you get past [G.V.]—

THE COURT: Right.

[PROSECUTOR]:—we had the Clearwater pool and boat incidences and those went under 38.37, which dealt with the relationship and state of mind of [G.V.] and the defendant.

THE COURT: Right.

[PROSECUTOR]: And then after the defense started along down the line of, you know, he doesn't have any sexual interest, he doesn't know how to work a VCR, then those set of girls just went to rebut that defensive theory, and I think—

THE COURT: Okay. So you want to just limit it to rebuttal of the defensive theory? Really, that's why I let it in, as far as the Court's concerned.

[PROSECUTOR]: But I think if you look at, then, the cases that talk about when the defense brings up, you know, medical reason, that, you know, impotency or lack of desire, when they talk about it, they talk about how it really goes unlike what you're talking about is opportunity, motive and plan. I mean, I don't care—I mean, that was our reasoning—

THE COURT: Well, let's leave out— as far as the Court's concerned, let's leave out, then, intent and preparation. That leaves motive, opportunity, plan and rebuttal of defensive theory.

Do you have any problem with that from the State's point of view?

[PROSECUTOR]: No, sir.

THE COURT: Okay. Let's leave intent and preparation out.

Now, do you have any objection to it?

[DEFENSE COUNSEL]: Yes, sir. I don't think those extraneous offenses have anything to do with opportunity.

THE COURT: All right. I'll—I'll overrule that objection, then. And it will be left in—opportunity will be left in.

This exchange between the trial court and the parties indicates that the State offered the incidents in question not only to rebut a defensive theory, but also to show opportunity, motive, and plan. The trial court's responses indicate an acceptance of the State's reasoning. Thus, the trial court found that the extraneous offense and bad acts evidence was offered for and relevant for all four purposes, including opportunity. *See Taylor*, 920 S.W.2d at 323 (holding that when extraneous offense evidence is relevant to motive, intent, identity, and rebuttal of defensive theory, trial court may properly include more than one purpose in jury instruction). We hold that the trial court did not err by including two limiting instructions in the jury charge, properly instructing the jury on the purposes for which the extraneous offense/bad acts evidence could be considered. Under the first step of the *Almanza* analysis, no charge error occurred. 686 S.W.2d at 174. Consequently, we need not conduct a harm analysis. We overrule Jones's third issue.

## C. Proper Definition of Reasonable Doubt

In his fifth issue, Jones contends that the trial court erred by including in the charge at the guilt-innocence phase part of the disapproved *Geesa*[2] "reasonable doubt" definition. Jones claims that the inclusion of this reasonable doubt definition violates *Paulson v. State*.[3] We have decided this issue adversely to Jones. *See Minor v. State*, 91 S.W.3d 824, 827 (Tex.App.-Fort

Worth 2002, pet. ref'd). Accordingly, we overrule Jones's fifth issue.

## VI. COURT PROPERLY OVERRULED JONES'S OBJECTION DURING FINAL ARGUMENT

In his fourth issue, Jones argues that the trial court erred by overruling his objection to the State's final argument during the guilt-innocence phase. Specifically, Jones complains that the prosecutor went outside the record by stating, "Lies are concocted and rehearsed. And bless her little heart, did you hear [Jones's daughter] this morning? She was rehearsed and practiced. That's what a lie sounds like." Furthermore, Jones alleges that he was harmed because the trial court put its "imprimatur on the State's argument."

### A. Standard of Review for Jury Argument

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

If a jury argument exceeds the bounds of proper argument, the trial court's erroneous overruling of a defendant's objection is not reversible error unless it affected the appellant's substantial rights. TEX.R.APP. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex.Crim.App.2000); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119

---

**2.** *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991), *overruled by Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App.2000).

**3.** 28 S.W.3d 570 (Tex.Crim.App.2000).

S.Ct. 1466, 143 L.Ed.2d 550 (1999). In determining whether the appellant's substantial rights were affected, we consider: (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks); (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Martinez,* 17 S.W.3d at 692–93; *Mosley,* 983 S.W.2d at 259.

### B. Proper Jury Argument in Light of Evidence

Jones contends the State's argument was improper because it suggested that Jones's daughter's (C.J.'s) testimony was fabricated when no evidence of fabrication was presented to the jury. Citing *Smith v. State,* 635 S.W.2d 671, 672 (Tex.App.-Dallas 1982, no pet.), he contends that the prosecutor's argument was "outside of the record." In *Smith,* the Dallas Court of Appeals held the prosecutor's comment during closing argument that the defendant's alibi witness waited until the day of trial to tell anyone the defendant was at work at time of the offense injected facts not in the record and improperly suggested the alibi witness was lying based on evidence not before the jury. *Id.*

 A party is permitted, however, during closing argument to allude to the demeanor of a testifying witness if the jury had the same opportunity to observe the demeanor during the witness's testimony. *Good v. State,* 723 S.W.2d 734, 736 (Tex. Crim.App.1986). The State's argument here could be reasonably interpreted as alluding to the purported stilted and practiced demeanor of Jones's daughter and as drawing the inference from this demeanor that she was lying. *See Felder,* 848 S.W.2d at 94–95 (recognizing State may argue reasonable deduction from the evidence). The jury had an equal opportunity to observe C.J.'s demeanor during her testimony, and the State was allowed to comment on it. *See id.* This comment was in the nature of an observation requiring no expertise, and therefore was incapable of adding to or subtracting from the knowledge of the jurors who had likewise viewed C.J.'s testimony. *See Reynolds v. State,* 505 S.W.2d 265, 267 (Tex.Crim.App. 1974). Thus, unlike the prosecutor's argument in *Smith,* the prosecutor's comment here was not "outside of the record" and was not improper. *Cf. Smith,* 635 S.W.2d at 672. We overrule Jones's fourth issue.

### VII. CONCLUSION

Having overruled each of Jones's five issues, we affirm the trial court's judgment.