COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-06-110-CR

        2-06-111-CR

ARTHUR AYALA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Arthur Ayala appeals from his convictions for aggravated sexual assault of a child and indecency with a child.  In one point, Appellant argues that the trial court erred by admitting extraneous-offense testimony regarding several occasions when he physically beat his wife and children.  We affirm.

Background

In 1994, Appellant lived in Fort Worth with his wife, Elva, and their four daughters: R.A., age fifteen; A.A., age eleven; E.A., age eight; and V.A., age three.  Elva worked two jobs. She was regularly away from home from 4:00 a.m. to 7:00 a.m., when she would return to get the children ready for school.  She would then go to her day job and return home around 3:00 p.m. when the children were returning home from school. 

In the early morning hours of June 1, 1994, Appellant entered his daughters’ bedroom, lifted up E.A. without waking her, and carried her down the hall to his own bedroom.  E.A. woke up in her parents’ bedroom to find Appellant “on top of me.”  Appellant was naked.  Though she had gone to bed wearing shorts, a shirt, and panties, when she awoke she was wearing only her shirt.  Appellant penetrated E.A.’s vagina with his penis.  He placed his hand over her mouth in an attempt to smother her crying and screaming, and he hit her mouth and made her lip bleed. 

E.A. testified that Appellant had abused her in the same way several times over the course of two years.  A.A. and R.A. knew about the abuse for about six months before the June 1 incident but did not tell anyone because they were scared of Appellant. 

A.A. heard E.A. screaming in her parents’ bedroom.  As she had sometimes done in the past, but not always, because she was scared of Appellant, A.A. walked down the hall, pressed her ear to the locked bedroom door, and heard E.A. crying.  She knocked on the door to ask if E.A. was alright.  Appellant opened the door a crack and told A.A. that her sister was okay, but A.A. did not believe him.  When Appellant released E.A., she returned to her bedroom and eventually told A.A. what had happened.   

When Elva returned home from work, Appellant was gone from the house, and she found A.A. crying in her room.  A.A. told Elva what Appellant had done to E.A.  Elva questioned E.A., who told her,

[W]hen I wasn’t there, her father would go into her room and would pick her up while she was still asleep and will take her to his room and undress her and will torture her and then he will try to abuse her. 

E.A. was unable to tell her more because “she could not speak, she was crying too much.”

Elva called the police.  Appellant was arrested the same day.  He gave police a written statement in which he admitted some aspects of the June 1 incident, including carrying E.A. to his bedroom, stripping her, and touching her “in her private parts,” and stated, “I might have put my finger inside of her ([E.A.]’s) vagina.”  He added,

I know that I am going to pay for my mistake.  My family is falling apart for what I did.  I know that I am going to have to pay for what I did, stay behind bars or whatever punishment I get. 

Two weeks later, Appellant’s brother Alberto posted Appellant’s bond.  The next day, Appellant told Elva that he wanted to run away to Mexico and threatened to hit her if she did not cooperate.  Alberto, without Elva’s permission, went to Elva’s house, gathered her four daughters and some of their clothes, and drove them to Mexico, while Elva remained at Alberto’s house with Appellant.  Sometime later, Appellant and Elva followed them to Mexico. Elva went only because Appellant forced and threatened her. 

Appellant, Elva, and their daughters lived in Saltillo with Alberto’s parents-in-law for two months.  Then they lived with Elva’s parents in Monterry for two or three years.  Eventually, Appellant was arrested in Mexico for beating Elva.  She moved to another house with her daughters and kept the location a secret from Appellant and even her parents, and she had no further contact with Appellant until the time of trial.  Elva divorced Appellant in Mexico and returned to Fort Worth in 1998.  

The record does not reflect the circumstances under which Appellant was apprehended and brought to trial in 2006.  A jury convicted him of aggravated sexual assault and two counts of indecency with a child and assessed punishment of seventy-five years’ confinement for the assault and ten years’ confinement for each indecency count.  The trial court entered judgment accordingly, and this appeal followed.

Extraneous offense evidence

  The trial court admitted, over Appellant’s rule 404 objection, testimony regarding several instances when Appellant physically abused Elva and his daughters by beating them.  A.A. testified that when Appellant hit Elva while they were living in Monterrey, “My mom had her lip busted really big.  There was blood all over the walls, her clothes were all tore and her eyes were small.”  Elva testified that Appellant hit and pushed E.A. “on many occasions” when they lived in Fort Worth and physically abused Elva herself both in Fort Worth and Mexico.  E.A. testified that when they lived in Monterrey, Appellant hit her on several occasions and physically abused R.A. 

A.A. also testified, without objection, that she, E.A., and R.A. did not tell anyone that Appellant was sexually abusing E.A. before the June 1, 1994 incident “[b]ecause we were scared of him. . . . He would hit us really bad, it didn’t matter where.”

Discussion

In his sole point, Appellant argues that the trial court erred by admitting, over his rule 404 objection, the extraneous-offense evidence that he beat Elva and the girls.  
We review a trial court’s evidentiary rulings for an abuse of discretion.  
Sauceda v. State
, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

Under rule 404(b), evidence of other crimes, wrongs, or bad acts is inadmissible if it is offered to prove the character of a person in order to show action in conformity therewith, but it may be admissible for other purposes, such as proof of motive, opportunity, intent, absence of mistake or accident, or to rebut a defensive theory.  
Tex. R.  Evid
. 404(b).  Article 38.37 of the code of criminal procedure provides that notwithstanding rule 404, evidence of other crimes, wrongs, or bad acts committed by a defendant against a child who is the victim of the alleged sexual assault “shall be admitted for its bearing on relevant matters, including:  (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child.”  
Tex. Code  Crim. Proc. Ann. 
art. 38.37 (Vernon Supp. 2006); 
Jones v. State,
 119 S.W.3d 412, 420 (Tex. App.—Fort Worth 2003, no pet.).

We first consider Elva and E.A.’s testimony that Appellant physically abused E.A. in Fort Worth and Mexico.  E.A. was the victim of the alleged sexual assault, and this testimony was relevant to the previous and subsequent relationship between Appellant and E.A.  Therefore, this testimony was admissible under article 38.37 notwithstanding rule 404, and the trial court did not err by admitting the testimony over Appellant’s rule 404 objection.  
See
 
Tex. Code Crim. Proc. Ann.
 art.
 38.37.

Next, we consider the testimony concerning Appellant’s physical abuse of Elva when they lived in Fort Worth.  An extraneous offense is admissible to explain why a victim of sexual assault did not make a prompt outcry.  
Wilson v. State,
 90 S.W.3d 391, 394 (Tex. App.—Dallas 2002, pet. ref’d) (holding testimony that defendant assaulted victim’s mother was admissible to explain delayed outcry) (citing 
Brown v. State
, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983)).  Here, E.A. testified that Appellant assaulted her for two years before she told her mother, and A.A. testified that she learned Appellant was sexually abusing E.A. six months before she told her mother.  Thus, the testimony regarding Appellant’s physical abuse of Elva before the June 1, 1994 incident is admissible to explain why E.A. did not make a prompt outcry with regard to the earlier instances of sexual abuse.

Finally, we consider the testimony that Appellant physically abused Elva and R.A. when they lived in Mexico.  Because this abuse occurred after E.A. told her mother about the sexual assault, it is not admissible to explain the delay in her outcry.  But it does explain why Elva and her daughters went to Mexico with Appellant and continued to live with him after reporting his sexual abuse of E.A. to the police—circumstances which otherwise might undermine Elva’s, E.A.’s, and A.A.’s credibility.  It also explains why Elva ultimately left Appellant, divorced him, and returned to the United States.  Under these circumstances, we cannot say that the trial court’s decision to admit this evidence is so clearly wrong that it lies outside the zone of reasonable disagreement; thus, the trial court did not abuse its discretion by overruling Appellant’s rule 404 objection.  
See Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g). 

We overrule Appellant’s sole point and affirm the trial court’s judgments.

PER CURIAM

PANEL F: GARDNER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH

Tex. R. App. P
. 47.2(b)

DELIVERED: May 10, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.