

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00128-CR

**STEPHEN CHRISTOPHER MCCORMICK,**

                                          **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                          **Appellee**

From the 77th District Court
Freestone County, Texas
Trial Court No. 10-116-CR

## MEMORANDUM  OPINION

Appellant, Stephen Christopher McCormick, was charged by indictment with one count of aggravated sexual assault of a child younger than fourteen years of age, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (a)(2)(B), (e) (West Supp. 2011). A jury convicted McCormick of the charged offense, and the trial court sentenced him to forty-five years' incarceration with no fine. In one issue on appeal, McCormick argues that the trial court erred by not giving a timely limiting instruction

regarding references to extraneous acts contained in letters that were proffered at trial. We affirm.

## I. BACKGROUND

McCormick was alleged to have sexually assaulted his then-seven-year-old daughter, Z.M., by "contacting" her sexual organ with his mouth. McCormick is divorced from Z.M.'s mother, and the incident allegedly took place during Z.M.'s weekend visitation with McCormick. Z.M. testified about the incident and explained that McCormick had "kissed me on my private."[1] Z.M. later told her mother about the incident who, in turn, contacted law enforcement.

At some point during the trial and while outside the presence of the jury, the State first tendered three letters written by McCormick for inclusion in the record. One letter in particular—State's exhibit 1, which McCormick calls the "Friday night" letter— troubled McCormick and resulted in several objections. In this letter, which was addressed to Z.M.'s mother, McCormick makes numerous statements about the incident and his legal situation. However, he also noted the following when he explained why the incident transpired: "I really have no real reason. I was high on K2,[2] but I don't know. I know that I didn't have God in my life and was destroying myself [with] porn." McCormick objected to State's exhibit 1, alleging that it referenced

___

[1] The testimony also suggested that McCormick penetrated Z.M.'s sexual organ with his finger; however, the indictment did not reference this allegation. In addition, a fellow inmate at the Freestone County Jail, testified that McCormick told him that "he was eating her [Z.M.] out" and that, while helping Z.M. shower, "the soap made it easy. His fingers were going in and out of her."

[2] In his appellate brief, McCormick described K2 as "a psychoactive herbal and chemical product [synthetic cannabis] which, when consumed mimics the effects of cannabis." APPELLANT'S BRIEF at pg. 1 (citing Wikipedia, Synthetic Cannabis, *available at* http://en.wikipedia.org/wiki/Synthetic_cannabis (last visited Feb. 16, 2012)).

extraneous acts, which constituted violations of Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b). Initially, McCormick asked that those references be excluded from the document. The State countered that the statements provided context as to why McCormick committed the offense and, thus, were more probative than prejudicial. While outside the presence of the jury, the trial court overruled McCormick's objections. After the trial court overruled his objections, McCormick requested that the trial court instruct the jury regarding extraneous offenses. The trial court provided the following response: "I've not heard all the evidence, but I probably will give one. But I'll give it in the charge. I'm not going to give it here and now. . . . But I intend to give an extraneous offense charge in the Court's charge."

Shortly thereafter, the jury was brought into the courtroom, and the trial resumed. While Z.M.'s mother was testifying, the State tendered the letters for official inclusion in the record. McCormick once again lodged his objections, which were overruled. He also requested a limiting instruction on extraneous offenses to which the trial court responded: "I'll give you one at the end of the trial." The State then had Z.M.'s mother read the contents of State's exhibit 1 into evidence. Prior to reading the statements regarding the K2 and pornography, McCormick objected and requested a limiting instruction about extraneous offenses. At this time, the trial court provided the following instruction:

> Ladies and gentlemen, I will go ahead and instruct you at this time. I intended to give you instruction at the end of the case. But I intend to instruct you now that if there are some other offenses that you hear about with regards to this exhibit, that those are only relevant if you find them relevant as to the issues in this case.

And then you must find beyond [a] reasonable doubt, that in fact, those offenses were committed and that they are relevant to issues here. Does everybody understand? You may proceed.

After the instruction, Z.M.'s mother proceeded to read into evidence the contents of State's exhibit 1, including the statements about the K2 and pornography.[3]

At the conclusion of the evidence, the jury was provided another limiting instruction regarding extraneous acts in the trial court's charge to the jury:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed.

The jury subsequently convicted McCormick of the charged offense, and the trial court assessed punishment at forty-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with no fine. The trial court certified McCormick's right to appeal, and this appeal ensued.

## II.  STANDARD OF REVIEW

The Texas Rules of Evidence make evidence of a criminal defendant's extraneous offenses inadmissible "to prove the character of a person in order to show action in conformity therewith," but makes such evidence admissible for other, limited purposes. TEX. R. EVID. 404(b); *see Hernandez v. State*, 109 S.W.3d 491, 494 (Tex. Crim. App. 2003); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Texas Rule of Evidence

---

[3] It is worth noting that McCormick chose to testify in his own defense wherein he explained the incident and made repeated references to his usage of K2 and pornography.

105(a) provides that when "evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a); *see Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001). "The language of Rule 105(a) requires, upon proper request, a limiting instruction to be given at the time the evidence is admitted." *Hammock*, 46 S.W.3d at 894; *see Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996) (op. on orig. submission)).[4] "[A] trial court does not have discretion to postpone giving a properly[-]requested limiting instruction when that request is made at admission of the evidence." *Hammock*, 46 S.W.3d at 894; *see Rankin*, 974 S.W.2d at 711-13.

The failure to give a timely limiting instruction pursuant to Texas Rule of Evidence 105(a) is non-constitutional error. *See Jones v. State*, 119 S.W.3d 412, 424 (Tex. App.—Fort Worth 2003, no pet.); *see also Taylor v. State*, No. 10-01-00109-CR, 2004 Tex. App. LEXIS 2338, at *14 (Tex. App.—Waco Mar. 10, 2004, pet. ref'd) (mem. op., not designated for publication). Other than constitutional error, "any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2. "'A substantial right is affected when the error had a substantial

---

[4] The Texas Court of Criminal Appeals specifically stated that:

The spirit of the rule [Texas Rule of Evidence 105] and the contemplation of the rule-makers includes two separate notions: First, that limiting instructions actually curb the improper use of evidence and, second, that the rule should act in a way that not only "restricts the evidence to its proper scope," but does so as effectively as possible. Working under these notions, *logic demands that the instruction be given at the first opportunity*.

*Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001) (quoting *Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996)) (emphasis in original).

and injurious effect or influence in determining the jury's verdict.'" *Burnett v. State*, 88 S.W.3d 633, 637 n.8 (Tex. Crim. App. 2002) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). "[A] criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Routier v. State*, 112 S.W.3d 554, 577 (Tex. Crim. App. 2003). Generally, in assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).

"An appellate court can and should consider overwhelming evidence of guilt in a harm analysis." *Id.* at 353. "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable." *Id.* at 355. Also, "whether the State emphasized the error can be a factor." *Id.* at 356. In analyzing the harm from the denial of a timely request for an extraneous-offense limiting instruction, we consider: (1) the extent of other evidence introduced; (2) whether the trial court gave a limiting instruction in the jury charge; (3) the length of time between the introduction of the extraneous-offense evidence and the charge limiting instruction; and (4) whether the extraneous offenses were "more heinous or inflammatory" than the charged offense. *Jones v. State*, 944 S.W.2d 642, 654 (Tex. Crim. App. 1996); *see Jones*, 119 S.W.3d at 424-25.

## III. ANALYSIS

In his only issue on appeal, McCormick asserts that the trial court erred by failing to give a timely limiting instruction even though a request was made. Specifically, McCormick complains about the introduction of his letters wherein he admitted to the extraneous acts of using K2 and viewing pornography.

As previously noted, the Texas Court of Criminal Appeals has stated that a rule 105(a) limiting instruction should be given when such a "request is made at admission of the evidence." *Hammock*, 46 S.W.3d at 894; *see Rankin*, 974 S.W.2d at 712-13. Here, while in the presence of the jury, the State simultaneously tendered the three letters for inclusion in the record. At that time, McCormick objected and requested a limiting instruction. *See id.* at 892 (noting that the "'party opposing evidence has the burden of objecting and requesting the limiting instruction at the introduction of the evidence'" (quoting *Garcia v. State*, 887 S.W.2d 862, 878 (Tex. Crim. App. 1994)). The trial court overruled McCormick's objection and declined to give an instruction at that time. However, when State's exhibit 1, which was the letter containing the alleged problematic material, was read into evidence by Z.M.'s mother, McCormick once again objected and requested a limiting instruction. This time, the trial court provided a rule 105(a) limiting instruction about extraneous offenses. *See* TEX. R. EVID. 105(a).

The State argues that the trial court's limiting instruction was timely "as it was prior to the jury's knowledge of the extraneous offenses." Based on the record before us, it is unclear whether this is true. What is apparent from the record is that a limiting instruction was not given at the time State's exhibit 1 was admitted into evidence. *See*

*Hammock*, 46 S.W.3d at 894; *see also Rankin*, 974 S.W.2d at 712-13. Though this appears to be a violation of rule 105(a), we cannot say that the error is harmful. *See* TEX. R. EVID. 105(a); *see also Jones*, 944 S.W.2d at 654. This is true for several reasons, which we discuss below.

In considering the factors articulated in both *Jones* cases, we cannot say that the trial court's failure to give a timely limiting instruction amounted to harmful error requiring a reversal of the trial court's judgment. *See Jones*, 944 S.W.2d at 654; *Jones*, 119 S.W.3d at 424-25; *see also Taylor*, 2004 Tex. App. LEXIS 2338, at *16. Here, the trial court gave two limiting instructions regarding the extraneous acts—the first instruction was given a few minutes after the letters were admitted into evidence, and the second was given the next day in the trial court's charge to the jury. *See Jones*, 944 S.W.2d at 654; *Jones*, 119 S.W.3d at 424-25; *see also Taylor*, 2004 Tex. App. LEXIS 2338, at *16. In addition, we do not believe that the extraneous acts referenced in State's exhibit 1— unlawfully using a controlled substance, K2, and viewing pornography—are "more heinous or inflammatory" than the offense of which McCormick was charged— aggravated sexual assault of a child younger than fourteen years of age. *See Jones*, 119 S.W.3d at 425; *see also Taylor*, 2004 Tex. App. LEXIS 2338, at *16. Moreover, there is an abundance of evidence in the record detailing the sexual assault of Z.M., including testimony from the child victim and the child victim's mother, admissions made by McCormick in the other letters which were not objected to, and admissions made by McCormick to a fellow inmate. *See Motilla*, 78 S.W.3d at 353 (indicating that an appellate court should consider overwhelming evidence of guilt in a harm analysis);

McCormick v. State                                                                 Page 8

*Jones*, 944 S.W.2d at 654; *see also Taylor*, 2004 Tex. App. LEXIS 2338, at *16. And finally, we find it worth mentioning that McCormick chose to testify on his own behalf, and it was he, not the State, who emphasized the extraneous acts in State's exhibit 1. *See Motilla*, 78 S.W.3d at 355-56. In fact, McCormick used the complained-of extraneous acts as excuses for why he committed the act alleged in this case.

Based on the foregoing, we conclude that the trial court erred by failing to give a limiting instruction with regard to the extraneous acts contained in State's exhibit 1 when the exhibit was first admitted into evidence. *See* TEX. R. EVID. 105(a); *see also Hammock*, 46 S.W.3d at 894; *Rankin*, 974 S.W.2d at 711-13. However, we further conclude that this error had no more than a slight effect on the jury's verdict and, thus, was harmless. *See* TEX. R. APP. P. 44.2; *Motilla*, 78 S.W.3d at 355-56; *Jones*, 119 S.W.3d at 424; *see also Taylor*, 2004 Tex. App. LEXIS 2338, at **16-23. Accordingly, we overrule McCormick's sole issue on appeal.

## IV.  CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
 Justice Davis, and
 Justice Scoggins
Affirmed
Opinion delivered and filed March 14, 2012
Do not publish
[CR25]