02-09-343-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-09-00343-CR

 

 


 
 
 MICHAEL
 ANTHONY ALMENDAREZ
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 271ST DISTRICT Court OF WISE
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          In four
issues, Appellant Michael Anthony Almendarez appeals his conviction for one
count of indecency with a child and one count of sexual assault of a child.  We
affirm.

II.  Factual
and Procedural Background

          While
on parole for an unrelated conviction, thirty-four-year-old Almendarez
moved in with his mother (Charlotte), his stepfather, and S.B., his
sixteen-year-old stepsister.  According to S.B., he started regularly supplying
her with mixed drinks containing Everclear alcohol and getting her drunk when
her father and stepmother were at work, asleep, or otherwise not around.  According
to S.B.’s then-fifteen-year-old best friend Shelby Crowley, Almendarez called Crowley
and told her that he had gotten S.B. drunk one weekend and, while giving S.B. a
foot massage, “one thing led to another” and, over S.B.’s clothes, he touched
the inside of S.B.’s thighs and rubbed on her genital area.

          On
May 3, 2008, after Almendarez supplied some Everclear-based mixed drinks to
S.B., S.B. became intoxicated.  Almendarez helped S.B. to bed and left her
room.  S.B. awoke later to find Almendarez next to her in bed, her hand on his
erect penis.  S.B. passed out and awoke a second time to find that she was
naked and that Almendarez had his tongue on her female sexual organ.  S.B.
passed out again.  When she awoke a third time, she found Almendarez on top of
her, with his penis inside her female sexual organ.  S.B. told him to stop,
pushed him off, passed out again, and when she awoke, she told Almendarez to
leave her room.

          The
following day, Almendarez wrote S.B. an apology letter that described the
assault in detail and asked for S.B.’s forgiveness.  S.B. tore up the letter
and threw the pieces in the trash can in her bedroom.  Almendarez wrote S.B.
two more letters and a poem.  S.B. left the second letter and poem on her bed,
but she tore up the third letter and also put it in the trash can in her
bedroom.

          Later
that week, S.B. told Crowley about the assault.  After school, Crowley and S.B.’s
friend Kelsey Knighten confronted Almendarez at work, and he admitted to them
that he had sex with S.B. on May 3, when they were drunk.  The next evening, Crowley
told her stepfather about the assault.  Crowley, her mother, and her stepfather
went to S.B.’s family’s trailer to provide support for S.B. when she told her father
and Charlotte about the assault.  S.B. went outside to meet them, and when her father
and Charlotte joined them, S.B. told them about the assault.  Almendarez stayed
inside.

          Crowley’s
mother called 911, and two sheriff’s deputies responded to the call.  One
deputy entered the trailer to speak with Almendarez, and the other remained
outside with S.B., S.B.’s parents, Crowley, and Crowley’s parents.  At some
point, Charlotte entered the trailer and asked Almendarez about whether he had
given S.B. alcohol, and he admitted to her that they drank alcohol together on
the night of the assault.

          S.B.
told the deputy that Almendarez had written her some letters and that they were
in her bedroom.  Because neither S.B. nor her father wanted to go into the trailer,
Crowley offered to retrieve the letters, and S.B. told her where to find them.  Crowley
entered the trailer, went into S.B.’s bedroom, and retrieved them.  Crowley
returned outside, taped the torn letters back together, and gave all of the
documents to the deputy.  Prior to trial, Almendarez filed several motions to
suppress these documents, which the trial court denied, and he reurged his
motion during trial, which the trial court again denied.

The first letter stated:

          There’s nothing that I can
ever say to fix my stupidity.  I think that it started when you kissed me back
and then started jacking me off as I rubbed you down there.  Part of me knew
better, but being drunk and feeling you respond back, made me think that it was
ok to lick you down there.  As I did . . . , and you moving with my . . .
tongue and your “xxx” . . . my mind went somewhere . . . .

          I should have just left
then.  I kept screwing up because the alcohol was kicking in stronger and
stronger.  I stuck it in a little & you said it hurt, and that was the only
time I was inside you.  Maybe 2 seconds.  I remember rubbing against you, but I
wasn’t inside.

          All of this is in case you’re
stressing over being pregnant.  You’re not.

          Please forgive me [S.B.]. 
I’ve never wanted to mess up our friendship.  Lots of people have gotten drunk &
done things they regretted.  Please understand it was alcohol.  I love you.  I
don’t regret part of it, because you are attractive.  I regret that you’re
uncomfortable and stressed, and scared.  I’m pouring out the alcohol today, and
I’ll never drink in your house again or be drunk around you.  I love you enough
to do my best to make it right for the future.  I will leave if you want that. 
I won’t be mad.  I really am sorry.  Just please give me another chance to be
normal with you.  It hurts to think that I am shut out of your life, but I can
accept your decision.

I wish you the best in life and you’ll always be in my
heart.

I’m sorry.

 

The second letter stated:

 

          When I was
on my knees holding your hands, the way that you left made me realize that I
needed to give you your space and get another job.[[2]]

 

          Your
feelings matter to me.  I would prefer your happiness over mine.  When I’m at
work, I get pleasure from talking smack to everyone that’s entertaing [sic] it,
because they laugh.  I receive pleasure from giving other people pleasure.  So
I put on my game face lately, even though I’m uncomfortable knowing that you
don’t want me around you.

 

          To be perfectly
honest as I can with you, you have some of the best qualities in anyone
that I’ve ever met.  But I’ve brought you unhappiness.  If I thought that by
dropping Stephanie and trying to feel your pain, and even trying to date you,
would somehow make it right; so that you wouldn’t assume that I would “hit
something & then quit something . . .”  I would.

 

          If I
thought that there were someway [sic] to regain your trust, I would.

 

          If I
thought that by leaving a job that I need, to give you your space, would make
you happier, I would.

 

          If I
thought that by moving I could bring you more happiness, I would.

 

          I love you
and would do my best to prove it to you.

 

          I have
historically screwed things up.  I’ve never tried to make things right, but
this time I want to because I’m motivated by love.

 

          I don’t
expect you to believe me or to even finish reading this.

 

          You are
very special to me and because of this, I put your happiness first.  You have
been my joy for so long.  You’ve made me feel at peace.  You’re so wonderful in
so many ways.  And I’ve ruined our relationship. 

 

          I’ll stay
out of your way, and your space, for your happiness, and hopefully, someday,
you’ll see that I really did care.

 

          The only
other option is for me to do something before you hate me worse.

 

          Take Care

 

In
the poem, entitled, “An Angel,” Almendarez blamed himself for making an angel
upset; in the last letter, he asked S.B. to pray with him.

          Almendarez
was arrested that night on an administrative warrant for a parole violation.  S.B.
went home with the Crowleys, and the next morning, Crowley’s mother took S.B.
to a hospital, where she underwent a sexual assault examination.  Because of
the length of time that had elapsed between the assault and the examination, no
physical evidence was taken from S.B.

          After
further investigation, the State charged Almendarez with one count
of indecency by contact—causing S.B. to touch his genitals—and one count of
sexual assault of a child—causing S.B.’s sexual organ to contact his sexual
organ.

          Almendarez
denied that he had provided alcohol to S.B. but admitted that they had been
drinking alcohol together on the night of the assault.  He said that they had
been watching comedies on the internet when S.B. spilled her drink on the
computer keyboard.  S.B. started throwing up on the rug near the computer while
Almendarez cleaned up the spill.  He denied sexually assaulting S.B. or that
they had had any sexual relationship.  Almendarez said that they had a
conversation the next day on the way to work about how upset he was about S.B.
spilling her drink and throwing up on the rug.  He told S.B. that he was going
to tell their parents about it, and this made S.B. mad.

          Almendarez
also denied telling Crowley that he and S.B. had sex on May 3 or that he had
ever called Crowley to tell her that he had gotten drunk and touched S.B.  He said
that Crowley demanded that he write the first letter, told him what to write,
and threatened that she and S.B. would have his parole revoked if he did not.  He
admitted that he wrote the other two letters and the poem on his own but said that
he was motivated to make a false confession by fear.  Both S.B. and Crowley
denied any involvement in Almendarez’s letter-writing efforts.  Charlotte
testified that S.B.’s reputation for being truthful was bad.

          After
both parties rested, Almendarez asked for an article 38.23 instruction related
to the legality of Crowley’s acquisition of the letters from S.B.’s room.  Almendarez
also asserted that because both counts arose from the same incident, the
application paragraph should require the jury to select from either the
indecency or the sexual assault charge.  The trial court denied these requests.

          A
jury found Almendarez guilty of both counts, and after Almendarez pleaded true
to the enhancement paragraphs and the jury heard punishment evidence, the jury sentenced
him to twenty-five years’ confinement on each count.  This appeal followed.

III.
 Suppression

          In
his third issue, Almendarez asserts that the trial court erred by failing to
suppress the letters and poem that he wrote to S.B. because Crowley’s entry
into his family’s trailer violated his right to privacy under the United States
and Texas Constitutions and that the letters were thus inadmissible or,
alternatively, that the trial court erred by failing to include an article
38.23 instruction in the jury charge with respect to the letters.  In response,
the State contends that Almendarez lacks standing to challenge Crowley’s
actions because he did not have a reasonable expectation of privacy in S.B.’s bedroom.

          To
assert a challenge to a search and seizure under the United States and Texas
Constitutions and article 38.23, a party must first establish standing.  See
Kothe v. State, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004); Villarreal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Martinez v. State,
236 S.W.3d 361, 367 (Tex. App.—Fort Worth 2007, pet. dism’d).  Standing may be
reviewed as part of the claim presented or may be raised by the court of
appeals sua sponte.  Kothe, 152 S.W.3d at 60.  Standing is a question of
law that we renew de novo.  Id. at 59.

          To
establish standing, the defendant has the burden of providing facts to
establish a legitimate expectation of privacy, and to carry this burden, he
must prove that (1) by his conduct, he exhibited an actual subjective
expectation of privacy and (2) circumstances existed under which society was
prepared to recognize his subjective expectation as objectively reasonable.  Villarreal,
935 S.W.2d at 138.  The following factors are relevant in determining whether
the defendant’s subjective expectation is one that society is prepared to
recognize as objectively reasonable:  (1) whether the accused had a property or
possessory interest in the place invaded; (2) whether he was legitimately in
the place invaded; (3) whether he had complete dominion or control and the
right to exclude others; (4) whether, prior to the intrusion, he took normal
precautions customarily taken by those seeking privacy; (5) whether he put the
place to some private use; and (6) whether his claim of privacy is consistent
with historical notions of privacy.  Voyles v. State, 133 S.W.3d 303,
306 (Tex. App.—Fort Worth 2004, no pet.) (quoting Granados v. State, 85
S.W.3d 217, 223 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 927
(2003)).  Courts must also examine the totality of the circumstances
surrounding the search.  Id. (citing Villarreal, 935 S.W.2d at
138–39).

          Almendarez
bore the burden of proof to show that he had a legitimate privacy interest in
S.B.’s bedroom.  See Granados, 85 S.W.3d at 222–23; Villarreal,
935 S.W.2d at 138.  There is no evidence in the record showing that Almendarez
had a subjective expectation of privacy in S.B.’s room or the documents.  Rather,
the record reflects that Almendarez gave the letters and the poem to S.B., thus
surrendering any right that he had to assert a property interest in them.  See
Pham v. State, 324 S.W.3d 869, 875–76 (Tex. App.—Houston [14th Dist.] 2010,
pet. ref’d) (stating that by giving the bag containing methamphetamine to someone
else, “appellant assumed the risk that his confidant would reveal that
information to the public, thus frustrating appellant’s expectation of privacy”;
further, by so doing, appellant lost dominion and control over the bag or its
contents, relinquishing his right to exclude others from them), cert. denied,
No. 11-61, 80 U.S.L.W. 3058 (Oct. 3. 2011).  Further, there is no evidence to
show that Almendarez had a subjective expectation of privacy over the areas
primarily occupied and controlled by S.B.  See Martinez, 236
S.W.3d at 367–68 (acknowledging that appellant had no standing to challenge the
search of his son’s pants).  Accordingly, he lacked standing to complain of Crowley’s
actions, and the trial court did not err by denying his motion to suppress.  See
Voyles, 133 S.W.3d at 306 (listing the Granados factors).

          Furthermore,
although Almendarez alternatively argues that the trial court erred by
failing to include an article 38.23 instruction in the jury charge, because Almendarez
lacked standing to complain about the seizure of the evidence, the trial court
did not err by denying his request for the instruction.  See Chavez
v. State, 9 S.W.3d 817, 819–20 (Tex. Crim. App. 2000) (holding that because
appellant lacked standing to complain about the seizure of cocaine when it was
not obtained in violation of his rights, he was not entitled to an article
38.23 instruction); Pham, 324 S.W.3d at 874 (stating that to assert a
challenge to a search and seizure under the U.S. and Texas Constitutions and
article 38.23, the party must first establish standing); Orr v. State,
306 S.W.3d 380, 401 (Tex. App.—Fort Worth 2010, no pet.) (overruling
appellant’s article 38.23 point because she lacked standing when her rights
were not violated).  We overrule Almendarez’s third issue.

IV.  Harmless
Error

          In
his first two issues, Almendarez argues that he was denied the right to present
a full defense because the trial court excluded evidence of S.B.’s specific
prior bad acts and her prior allegations of physical abuse against others and
that the trial court erred by admitting evidence of his extraneous offenses without
a limiting instruction.

A. Excluded
Testimony

          S.B.,
Charlotte, and Almendarez all testified outside of the jury’s presence as set
out below.

          S.B.
admitted to most of the misdeeds alleged by Almendarez, namely drinking
alcohol, smoking cigarettes, driving her father’s truck without permission or a
driver’s license, dating an eighteen-year-old boy and going to his house when
she was not supposed to, and being late for work due to spending time with her
boyfriend, but she denied smoking marijuana.  S.B. admitted that she and Almendarez
had a conversation about these acts around May 4, 2008, but she denied that she
was upset with Almendarez for telling her that he was going to tell her parents
about them.

          S.B.
also denied that her allegations against Charlotte for physical abuse in 2003,
2005, and 2006 were false and said that she did not make the allegations
because she was mad at Charlotte.  She admitted that she signed an affidavit of
nonprosecution so that she could return to live with her father and Charlotte,
but on cross-examination by the State, she explained that the affidavit just stated
that she did not want to go forward with the charges and that she did not make
any statements in the affidavit about lying about the allegations or that they
were false.

          S.B.
denied making an allegation of abuse against her biological mother so that she
could return to live with her father and Charlotte.  S.B. also denied that she
had been in a fight with a boy at church in 2004 and had assaulted him.  In
response to defense counsel’s question about whether she would agree that the
allegation that the boy had assaulted her was false, S.B. replied, “Yes.  Well,
no; it’s not false.”

          Charlotte
testified that in 2003, S.B. falsely accused her of physical abuse when S.B.
was upset with her, and Child Protective Services (CPS) became involved.  She
said that CPS’s investigation did not result in any charges against her.  Charlotte
also said that in 2005, she and S.B. had had an argument the day before she
took S.B. to the airport for a visit to her biological mother, and she learned
later from S.B.’s biological mother that S.B. had again made false allegations
of physical abuse against Charlotte.  CPS investigated again, but no charges
were brought against Charlotte.  Charlotte also said that in 2004, S.B. told
her that a boy had assaulted her at church; after Charlotte called the police
and investigated, she learned that the allegation was false.

          Charlotte
said that on the night Almendarez was arrested, she asked S.B. if she had been
going over to her boyfriend’s house instead of going straight to work after
school and that S.B. first lied but then admitted that she had been doing this.
 S.B. also initially denied other activities such as drinking, smoking, and
taking the truck when she was not supposed to; Charlotte said she did not
recall if S.B. later admitted to drinking, smoking, or taking the truck.  Charlotte
said that S.B. had a bad reputation for truthfulness.[3]

          Almendarez
testified that he had seen S.B. drink alcohol over thirty times, that he had
seen her smoke cigarettes at least ninety times, and that he had seen her on
several occasions take the truck on her own when she was not supposed to.  He
also said that S.B. told him about her eighteen-year-old boyfriend and that he
had seen the boyfriend drop S.B. off at work late.  When he called home to look
for her once when she was late for work and later told her about this, S.B. got
mad, threatened him, and told him to never call anywhere looking for her.[4]

          On
the day after the alleged sexual assault, Almendarez testified that when he and
S.B. drove to work, he told her that everything would have to stop:  the boyfriend,
the cigarettes, going to the boyfriend’s house, the drinking, and the truck stealing,
or he was going to report the boyfriend to the police because of his age, and
tell their parents.  Almendarez said that he told S.B. this because when they
had been drinking together on May 3, S.B. spilled some alcohol on an expensive
computer, and the risk of him getting in trouble was too high.  Almendarez said
that S.B. then threatened that if he said anything to their parents, she was
going to put him in jail first.

          Almendarez
also stated that he was aware of S.B.’s abuse allegations to CPS prior to May
2008 and knew that S.B. was capable and had a history of putting people in
compromised legal situations.  S.B. had told him that she wanted to get back to
her father and Charlotte’s trailer for Christmas because they had more money
than her biological mother, and she wanted better Christmas gifts, so she had
made false allegations against her biological mother to get back home.

          The
trial court sustained the State’s objection to the testimony above and to Almendarez’s
request to admit CPS records ruling out S.B.’s physical abuse accusations
against Charlotte.

B. Limiting
Instruction on Extraneous Acts

          Almendarez
requested a limiting instruction on his extraneous acts: Crowley’s testimony
about Almendarez telling her that he had touched S.B.’s thigh and genital area
over S.B.’s clothes while S.B. was drunk on a prior occasion and S.B.’s
testimony that he had performed oral sex on her on the night of the assault, as
well as the letters’ references to same.

C.
Harm

          We
assume, without deciding, that the trial court erred by excluding S.B.’s
specific bad acts and by failing to give a limiting instruction on Almendarez’s
extraneous offenses.

1.   
Constitutional Error

          In
his second issue, Almendarez states that the trial court abused its discretion
by excluding his evidence because the specific bad acts were to show S.B.’s
motive for making false accusations against him.  Likewise, he contends that
Charlotte’s testimony about S.B.’s false allegations of abuse were also
admissible to show S.B.’s motive in making the accusations against him.

          Both
Almendarez and the State agree that a Confrontation Clause issue is not
presented, although the State contends that the evidence would also have been
excluded under the Sixth Amendment because there was no causal connection or
logical relevance that could give rise to a potential bias or motive to testify
and Almendarez, while limiting his analysis to the rules of evidence, argues that
if this court disagrees that the evidence is admissible under the rules of
evidence, it is “nevertheless admissible under the Confrontation Clause.”  Because
the Confrontation Clause is implicated in this analysis, we will review the
assumed error under rule 44.2(a).  See Rubio v. State, 241 S.W.3d 1, 3
(Tex. Crim. App. 2007) (stating that any Confrontation Clause violation is
subject to harmless error analysis).

          In
applying the “harmless error” test, our primary question is whether there is a “reasonable
possibility” that the error might have contributed to the conviction or
punishment.  Tex. R. App. P. 44.2(a); Mosley v. State, 983 S.W.2d 249,
259 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070
(1999).  Our harmless error analysis should not focus on the propriety of the
outcome of the trial; instead, we should calculate as much as possible the
probable impact on the jury in light of the existence of other evidence.  Wesbrook
v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied,
532 U.S. 944 (2001).  We consider a nonexclusive list of factors, including the
nature of the error, whether it was emphasized by the State, the probable
implications of the error, and the weight the jury would likely have assigned
to it in the course of its deliberations.  Snowden v. State, No.
PD-1524-10, 2011 WL 4467280, at *4 (Tex. Crim. App. Sept. 28, 2011) (“At
bottom, an analysis for whether a particular constitutional error is harmless
should take into account any and every circumstance apparent in the record that
logically informs an appellate determination whether ‘beyond a reasonable doubt
[that particular] error did not contribute to the conviction or punishment.’”).

          The
trial court excluded S.B.’s and Almendarez’s testimonies about S.B.’s misdeeds
(drinking, smoking, driving without permission, dating an older boy, and being
late for work because of her relationship with the older boy) and about S.B.’s
reaction to Almendarez’s threat to tell Charlotte and her father about these
misdeeds—S.B. said that she was not upset, and Almendarez said that she was and
that she threatened him.  However, the jury heard Almendarez testify that when
he told S.B. that he was going to tell their parents about her spilling her
alcoholic drink on the computer and then vomiting on the rug, S.B. and Crowley
threatened that they would have his parole revoked if he did not write the
first letter and that his motivation to make a false confession by writing the
first letter and then the subsequent two letters and the poem was fear of S.B.
and Crowley.[5]  Therefore, the jury
still had a chance to judge S.B.’s credibility in light of her alleged threat
to have Almendarez’s parole revoked and, inferentially—based on the letters’
content—that her threat involved the charged offenses.

          Further,
although the trial court excluded S.B.’s, Almendarez’s, and Charlotte’s
testimonies about S.B.’s physical abuse allegations against Charlotte made
several years before, along with the records covering the family’s extensive
CPS history, the jury heard Charlotte testify that S.B. had bad character for
truthfulness. 

          In
its opening statement, the State focused on Almendarez’s letters.  Immediately
following the State’s opening statement, Almendarez informed the jury in his
opening statement that the jury needed to pay close attention to S.B.’s
testimony, to listen “to what her motivation may be to tell something that’s
less than the truth,”[6] and to listen for
consistency in what S.B. had told various people.  He also attempted to mitigate
the letters’ impact, stating that the jury should determine whether “it’s
possible that a person could write these notes and write these letters for some
motivation other than the fact that they’re true.”

          In
the first part of its closing argument, the State argued that the jurors should
think about the evidence that they heard and look at the letters.  Almendarez
then argued that there were inconsistencies in the witnesses’ testimonies, that
S.B. was a liar, and that Almendarez had told the jury “that something was
going on, and that he felt threatened by these girls.”  He further argued that
Crowley had dictated the contents of the letter to him and that Charlotte had
testified that S.B. was not a truthful person.  The State then closed by
reemphasizing Almendarez’s letters, how absurd Almendarez’s blackmail theory
was as S.B. had torn up and thrown away two of the letters, and that the
letters contained the truth.

          Because
the letters written by Almendarez contained explicit, graphic descriptions of the
charged offenses and were admitted into evidence, and because the defense
theory that S.B. was a liar with a motivation to lie and to blackmail Almendarez
into writing the letters was before the jury, after carefully reviewing the
record and performing the required harm analysis under rule 44.2(a), we hold
beyond a reasonable doubt that the trial court=s
alleged error did not contribute to Almendarez=s
conviction or punishment.  Tex. R. App. P. 44.2(a).  We overrule Almendarez’s
second issue.

2.   
Non-Constitutional Error

          In
his first issue, Almendarez complains that the trial court erred by “admitting
evidence of extraneous acts, allegedly committed by [Almendarez], without a
limiting instruction on the proper use or reasonable doubt standard.”[7]

          When
a trial court errs by refusing to give a contemporaneous limiting instruction,
that error is non-constitutional and is subject to a harmless error analysis
pursuant to Texas Rule of Appellate Procedure 44.2(b).  Jones v. State,
944 S.W.2d 642, 653–54 (Tex. Crim. App. 1996), cert. denied, 522 U.S.
832 (1997); Jones v. State, 119 S.W.3d 412, 423–24 (Tex. App.—Fort Worth
2003, no pet.).  A non-constitutional error is harmless unless it affects a
defendant’s substantial rights.  Tex. R. App. P. 44.2(b); Jones, 119 S.W.3d
at 424.  A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury’s verdict.  King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v.
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). 
Conversely, an error does not affect a substantial right if we have a fair
assurance that the error did not influence the jury, or had but a slight
effect.  Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  In making this
determination, we review, among other things, the record as a whole, including
any testimony or physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002).

          Here,
the record reflects ample evidence of Almendarez’s guilt because S.B.’s
testimony about Almendarez’s actions during the assault is sufficient to
support the jury’s verdict as to each of the charged offenses.  In addition,
the objected-to evidence was statutorily relevant pursuant to article 38.37 of
the code of criminal procedure to show Almendarez’s and S.B.’s states of mind
and to show the previous and subsequent relationship between them.  See
Tex. Code. Crim. Proc. Ann. art. 38.37 (West 2005 & Supp. 2011).  Moreover,
the extraneous evidence was not more heinous or inflammatory than the evidence
pertaining to the charged offenses, minimizing its prejudicial effect even in
the absence of a contemporaneous limiting instruction.  See, e.g.,
Jones, 944 S.W.2d at 654; Jones, 119 S.W.3d at 425.  And the jury
charge contained a limiting instruction with regard to extraneous offenses
committed by Almendarez, which further reduced the risk that the jury might
misuse the evidence during jury deliberations.  See Jones, 119 S.W.3d at
425.  For these reasons, we conclude that any error by the trial court by
overruling Almendarez’s requests for a contemporaneous limiting instruction was
harmless.  See Tex. R. App. P. 44.2(b).

V.  Lesser
Included Offense

          In
his fourth issue, Almendarez complains that the trial court erred by not
including a lesser included offense instruction in the jury charge. 
Specifically, he argues that because they stemmed from the same transaction, the
indecency count was a lesser included offense to the sexual assault count.

          We
use a two-step analysis to determine whether an appellant was entitled to a
lesser included offense instruction.  Hall v. State, 225 S.W.3d 524, 528
(Tex. Crim. App. 2007); Rousseau v. State, 855 S.W.2d 666, 672–73 (Tex. Crim.
App.), cert. denied, 510 U.S. 919 (1993).  First, the lesser offense
must come within article 37.09 of the code of criminal procedure.  Tex. Code
Crim. Proc.  Ann. art. 37.09 (West 2006); Moore v. State, 969 S.W.2d 4,
8 (Tex. Crim. App. 1998).  An offense is a lesser included offense of another
offense, under article 37.09(1), if the indictment for the greater-inclusive
offense either:  (1) alleges all of the elements of the lesser included
offense, or (2) alleges elements plus facts (including descriptive averments,
such as non-statutory manner and means, that are alleged for purposes of
providing notice) from which all of the elements of the lesser included offense
may be deduced.  Ex parte Watson, 306 S.W.3d 259, 273 (Tex. Crim. App.
2009) (op. on reh’g).  Both statutory elements and any descriptive averments
alleged in the indictment for the greater inclusive offense should be compared
to the statutory elements of the lesser offense.  Id.  If a descriptive
averment in the indictment for the greater offense is identical to an element
of the lesser offense, or if an element of the lesser offense may be deduced
from a descriptive averment in the indictment for the greater-inclusive
offense, this should be factored into the lesser included offense analysis in
asking whether all of the elements of the lesser offense are contained within
the allegations of the greater offense.  Id.

          Second,
some evidence must exist in the record that would permit a jury to rationally
find that if the appellant is guilty, he is guilty only of the lesser offense. Hall,
225 S.W.3d at 536; Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App.
2005); Rousseau, 855 S.W.2d at 672–73.  The evidence must be evaluated
in the context of the entire record.  Moore, 969 S.W.2d at 8.  There
must be some evidence from which a rational jury could acquit the appellant of
the greater offense while convicting him of the lesser included offense.  Id. 
The court may not consider whether the evidence is credible, controverted, or
in conflict with other evidence.  Id.  Anything more than a scintilla
of evidence may be sufficient to entitle a defendant to a lesser charge.  Hall,
225 S.W.3d at 536.

          Indecency
with a child is a lesser included offense of aggravated sexual assault of a
child when both offenses are predicated on the same act.  See Evans v. State,
299 S.W.3d 138, 143 (Tex. Crim. App. 2009); Ochoa v. State, 982 S.W.2d
904, 908 (Tex. Crim. App. 1998) (holding that the defendant should not have
been charged with both indecency with a child and sexual assault, but instead,
indecency with a child should have been submitted as a lesser included offense
because there was evidence of only one act by the appellant).  However,
separate charges of indecency with a child and sexual assault of a child are
proper when the evidence indicates that two separate offenses took place.  See
Patterson v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that
when two penetrations were separated by a short period of time, two independent
assaults occurred, and it was proper to submit two different charges to the
jury); Tyson v. State, 172 S.W.3d 172, 178 (Tex. App.—Fort Worth 2005,
pet. ref’d) (holding that in a prosecution for aggravated sexual assault of a
child based on different acts occurring in the same transaction, each act is a
separate offense under section 22.021 of the penal code unless one of the acts
would be subsumed by another, such as contact subsumed by penetration); Bottenfield
v. State, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref’d)
(holding that even though appellant’s two acts may have been committed during
the same occurrence, appellant’s touching of victim’s genitals with his finger
was a separate and distinct criminal act from touching her genitals with his
penis), cert. denied, 539 U.S. 916 (2003).

          To
resolve Almendarez’s challenge, we must focus on whether the evidence justified
the trial court in submitting instructions that would permit the jury to
convict and sentence Almendarez both for committing aggravated sexual assault
and for committing indecency with a child.  See Ochoa, 982 S.W.2d
at 907.  The record reflects that Almendarez committed two separate
acts—penetrating S.B.’s sexual organ with his sexual organ and placing S.B.’s hand
upon his penis—which constitute two separate offenses.  See In re J.H.,
150 S.W.3d 477, 485 (Tex. App.—Austin 2004, pet. denied) (holding that
defendant’s touching child’s genitals with his fingers was separate offense
from causing her genitals to touch his mouth); Murray v. State, 24
S.W.3d 881, 889 (Tex. App.—Waco 2000, pet. ref’d) (same); cf. Bottenfield,
77 S.W.3d at 358 (holding that even though appellant’s acts may have been
committed during same occurrence, appellant’s touching of victim’s genitals
with his finger was a separate and distinct criminal act from touching her
genitals with his penis).  Therefore, here, the indecency with a child count is
not a lesser included offense of the sexual assault count.  See Bottenfield,
77 S.W.3d at 358; Murray, 24 S.W.3d at 889 (holding that because the
evidence supported that defendant committed two separate acts, indecency with a
child was not a lesser included offense of aggravated assault); see also
Ochoa, 982 S.W.2d at 907.  We overrule Almendarez’s fourth issue.

VI. 
Conclusion

          Having
overruled Almendarez’s third and fourth issues and having determined that any
error associated with his first and second issues was harmless, we affirm the
trial court’s judgment.

 

BOB MCCOY
JUSTICE

 

PANEL:
 WALKER and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting
by Assignment).

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  December 1, 2011









          [1]See Tex. R. App. P. 47.4.





[2]S.B. and Almendarez worked
together at a barbecue restaurant.





[3]Charlotte also stated
before the jury that S.B.’s reputation for being truthful was bad.





[4]Almendarez’s brother,
Robert Boeker, also testified outside the jury’s presence that in April 2008,
Almendarez told him that he had seen S.B. “running around with her dope-head
boyfriend” instead of going to work after school and that Almendarez was going
to tell Charlotte and S.B.’s father “because she didn’t need to be running
around with a pothead.”





[5]Almendarez told the trial
court outside the jury’s presence that if State’s Exhibits 1, 2, and 3—his
letters and the poem—had been suppressed, then he would not have testified.





[6]Almendarez’s counsel also
stated, 

And what you’re going to hear is that right around this
time, right around May 9th of 2008, when she made this allegation, just before
that, you’re going to hear that there was some sort of a confrontation between
[S.B.] and . . . Almendarez, that would cause [S.B.]—would give her motivation
to accuse him of something like this.





[7]Almendarez does not argue
the propriety of entering the extraneous acts into evidence, thus we only
consider any error associated with the trial court’s failure to issue limiting
instructions.