02-12-024-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00024-CR

 

 


 
 
 Richard
 R. Watkins
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 371st District
 Court
  
 of
 Tarrant County (1238649D)
  
 February
 14, 2013
  
 Per
 Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

PER
CURIAM

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00024-CR

 

 


 
 
 Richard R. Watkins
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. Introduction

A
jury convicted Appellant Richard R. Watkins of continuous sexual abuse of a
child and assessed his punishment at confinement for life.  See Tex.
Penal Code Ann. § 21.02 (West Supp. 2012).  The trial court sentenced him
accordingly.  In his sole issue, Watkins contends that the trial court abused
its discretion by allowing evidence of computer searches for child pornography
on Watkins’s laptop because the evidence had no probative value apart from
character conformity and was extremely prejudicial.  We will affirm.

II.  Factual and Procedural Background

Watkins
was married to Tammy, and they had four children together: Amy was seventeen
years old at the time of trial, Kelly was fifteen, Allison was fourteen, and
Jason was eleven.[2]  In
July 2007, they moved to a house on Oxford Street in River Oaks.  In March 2008,
the family moved to a house on Amherst Street in River Oaks.

In
October 2009, when Amy was fifteen, she hinted to her boyfriend that Watkins
was sexually abusing her.  Her boyfriend called Child Protective Services
(CPS).  A CPS investigator spoke with Amy and Kelly, and both girls denied
being abused.  Although CPS closed its case, Tammy remained suspicious of
Watkins’s relationship with their daughters based on interactions between them and
the fact that Tammy had found child pornography on his computer several times.[3]  She
made him move out of the family’s house the following month to keep him away
from the children.  After he moved out of the house, he saw his family
twice—once in November and once in December of 2010.

In
April 2011, Amy made an outcry to Tammy that Watkins had sexually abused her.  After
Amy’s outcry, Kelly also admitted that Watkins had sexually abused her.  A
sexual assault nurse examiner examined and interviewed both girls.  Amy also
underwent a mental health screening and was provisionally diagnosed with post-traumatic
stress disorder.  Allison, the youngest daughter, later made an outcry of
sexual abuse against Watkins. 

After
Watkins was arrested, police searched his laptop and found searches for “daddy”
plus “daughter” plus “videos or images” and found search terms associated with
child pornography.  Police also found child pornography videos stored on the laptop.

At
Watkins’s trial, Amy testified that she was thirteen when the family moved into
the house on Oxford Street.  At that house, Watkins showed Amy child
pornography on his computer.  He told Amy that the young girls in the videos
were having sex with their fathers and that it was normal to do so.  Watkins
made her take her clothes off, and he put his fingers inside her female sexual
organ.  He told Amy that he was going to loosen her up and prepare her for her
boyfriend.

Amy further
testified that when they moved to the house on Amherst Street, Watkins started
coming into the bedroom that she shared with her sister Kelly at night.  He
performed oral sex on Amy, touched her breasts, and masturbated while he
penetrated her female sexual organ with his fingers.  He attempted to have her
perform oral sex on him once, but she threatened to tell her mother.  Amy also
said that she once woke up and saw Watkins touching Kelly in her bed.  When Amy
was fifteen, Watkins tried to have sexual intercourse with her, but she
screamed and said she was going to tell her mother; Watkins did not touch her
again after that incident.  Amy testified that she had lied to CPS when they
interviewed her because she was worried what CPS would do to her mother and
what Watkins would do.

Kelly
was twelve years old when her family moved into the house on Oxford Street.  She
testified that she went with Watkins to pick up moving boxes to prepare to move
to the Oxford house and that on the way back, Watkins pulled over in a parking
lot and asked her to lie down in the back seat.  He took off her pants and
underwear and rubbed his penis on her female sexual organ.  Kelly recalled
crying and seeing Watkins’s semen when he ejaculated.  Kelly also testified
that she once asked Watkins to take her to her friend’s house and that Watkins
agreed to do so only if she would do something for him.  He took her into his
bedroom and told her to take off her pants; she cried and asked him to stop.  Watkins
licked her female sexual organ and rubbed his penis on it.  Afterwards, he took
her to her friend’s house.  Kelly testified about other times when Watkins
would put his hand down her shirt to “see if [her] nipple [could] get hard,”
telling Kelly that he was “preparing” her for her boyfriends so that she would
know what to do and how to do it.  She said that when they lived in the Amherst
house, Watkins would go into her and Amy’s bedroom and “rub her vagina”
regularly.

Watkins’s
defense at trial was that the allegations against him had been fabricated.

III.  Extraneous Bad Acts

In
his sole issue, Watkins argues that the trial court abused its discretion by
admitting testimony about what was found on his laptop when he was arrested. 
He argues that he did not “open the door” to this testimony, that the State
could not introduce it to prove his character conformity, and that it was more
prejudicial than probative.

A.  Standard
of Review and Law on Extraneous Offense Evidence

A
complaint about the admission of extraneous offense evidence is reviewed under
an abuse of discretion standard.  See Moses v. State, 105 S.W.3d 622,
627 (Tex. Crim. App. 2003).  The test for abuse of discretion is whether the
trial court’s action falls within the zone of reasonable disagreement.  Manning
v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

“Relevant
evidence” means evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence.  Tex. R. Evid. 401.  Evidence
of extraneous offenses is generally inadmissible.  Tex. R. Evid. 404(a).  However,
rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence
has relevance apart from character conformity.  Tex. R. Evid. 404(b).  Evidence
of other crimes, wrongs, or acts may be admissible to prove identity or intent,
to establish motive, or to show opportunity or preparation.  Id. 
Additionally, extraneous offense evidence may be relevant and admissible to
rebut a defensive theory.  See Ransom v. State, 920 S.W.2d 288, 301 (Tex.
Crim. App. 1994) (op. on reh’g), cert. denied, 519 U.S. 1030 (1996); Jones
v. State, 119 S.W.3d 412, 420–21 (Tex. App.—Fort Worth 2003, no pet.).

Article
38.37 of the Texas Code of Criminal Procedure provides that, notwithstanding rule
404, evidence of other crimes, wrongs, or bad acts committed by a defendant
against a child who is the victim of the alleged sexual assault shall be
admitted for its bearing on relevant matters, such as to show the state of mind
of the defendant and the child and the previous and subsequent relationship
between the defendant and the child.  Tex. Code Crim. Proc. Ann. art 38.37
(West Supp. 2012).

Extraneous
offense evidence that is relevant and admissible under rule 404(b) and article
38.37 may nonetheless be inadmissible under rule 403 if the probative value of
such evidence is substantially outweighed by unfair prejudice.  Mozon v.
State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Montgomery v. State,
810 S.W.2d 372, 390 (Tex. Crim. App. 1990).  “A proper [r]ule 403 analysis
includes, but is not limited to, the following factors: (1) the probative value
of the evidence; (2) the potential to impress the jury in some irrational, yet
indelible, way; (3) the time needed to develop the evidence; and (4) the
proponent’s need for the evidence.” Prible v. State, 175 S.W.3d 724, 733
(Tex. Crim. App.), cert. denied, 546 U.S. 962 (2005).

B.  No
Abuse of Discretion in Admitting Evidence of Computer Searches

Watkins
complains of the testimony of Tarrant County District Attorney’s Office Investigator
James Hollingsworth, who found child pornography and “daddy”-plus-“daughter”-plus-“images”-or-“videos”
searches on Watkins’s laptop after his arrest.  The laptop was not the same one
that Watkins used to show Amy pornographic videos at the Oxford house over
three years prior to his arrest.  Defense counsel objected that the evidence
was irrelevant and more prejudicial than probative.  The State responded that
it was entitled to introduce evidence of the searches to prove Watkins’s state
of mind and because defense counsel opened the door to this testimony by asking
the CPS worker and the sexual assault nurse examiner, during cross-examination,
whether there was any evidence corroborating Amy’s and Kelly’s allegations.  The
trial court admitted the testimony and granted defense counsel a running
objection.

The
indictment charged Watkins with continuous sexual abuse of a child by
committing two or more acts of aggravated sexual assault of a child on Amy and
Kelly.  See Tex. Penal Code Ann. § 21.02, § 22.021(a) (West Supp. 2012).
 “[I]ntent to arouse or gratify sexual desire” is an implicit element of sexual
assault.  See Sarabia v. State, 227 S.W.3d 320, 323–24 (Tex. App.—Fort
Worth 2007, pet. ref’d) (citing Ochoa v. State, 982 S.W.2d 904, 908 (Tex.
Crim. App. 1998)).  The State may prove intent through circumstantial evidence.
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Here,
the complained-of testimony showed that Watkins viewed the father-daughter
relationship as a sexual one; his viewing of child pornography, particularly
father-daughter pornography, is relevant circumstantial evidence of his intent
to arouse or gratify his sexual desire.  See Lewis v. State, 676 S.W.2d
136, 139 (Tex. Crim. App. [Panel Op.] 1984); Sarabia, 227 S.W.3d at 324;
Jones v. State, 119 S.W.3d 412, 420 (Tex. App.—Fort Worth 2003, no pet.);
Darby v. State, 922 S.W.2d 614, 620 (Tex. App.—Fort Worth 1996, pet. ref’d).
 Therefore, the trial court did not abuse its discretion by admitting the investigator’s
testimony under rule 404(b).  See Tex. R. Evid. 401, 404(b).

Regarding
Watkins’s rule 403 complaint, his viewing of child pornography, specifically father-daughter
pornography—even on a different computer than the one he used when he lived
with his family—tended to corroborate Amy’s testimony that Watkins had once
shown her videos of fathers and daughters engaging in sexual acts, as well as
Tammy’s testimony that she had found child pornography on his computer in the
past.  And as we have stated, his viewing of father-daughter pornography tended
to show that he viewed the father-daughter relationship as a sexual one.  The testimony
had little potential to impress on the jury in some irrational way; the State offered
only the investigator’s testimony about the searches, not the images or videos
found on Watkins’s laptop.  The investigator’s testimony took very little time
to develop, consisting of only six pages of the record.  Finally, although Amy
and Kelly both testified about the sexual abuse at trial, both had also
previously denied the abuse to a CPS investigator, and there was no physical
evidence and no eyewitness to corroborate their testimony; thus, the State
needed the evidence of Watkins’s searches for “daddy” plus “daughter” plus
“images” or “videos” to lend credibility to other testimony.  For these
reasons, we hold that the trial court did not abuse its discretion by admitting
the investigator’s testimony over Watkins’s rule 403 objection.

We
overrule Watkins’s sole issue.  See Sarabia, 227 S.W.3d at 324.

IV. Conclusion

Having
overruled Watkins’s sole issue, we affirm the trial court’s judgment.

 

 

PER CURIAM

 

PANEL:
WALKER, J.; LIVINGSTON, C.J.; and DAUPHINOT, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 14,
2013









[1]See Tex. R. App. P. 47.4.





[2]To protect the anonymity
of the children in this case, we will use aliases to refer to some of the
individuals named herein.  See Daggett v. State, 187 S.W.3d 444,
446 n.3 (Tex. Crim. App. 2005); McClendon v. State, 643 S.W.2d 936, 936
n.1 (Tex. Crim. App. [Panel Op.] 1982).





[3]Tammy testified that when
she confronted Watkins about what she found, he said someone had hacked into
the computer and put it there.